**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEWART ABRAMSON, individually and on behalf of all others similarly situated, | : : : : | Civil File No. _____ |
| Plaintiff, | : : : | |
| v. | : : : | **COMPLAINT – CLASS ACTION** |
| DATALOT, INC. D/B/A SOLIDQUOTE and REGAL RESULT, LLC | : : : : | |
| Defendants. | : : | |

**Preliminary Statement**

1.      As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      The Plaintiff Stewart Abramson alleges Datalot, Inc. d/b/a Solidquote ("Solidquote") hired Regal Result, LLC to make pre-recorded telemarketing calls for purposes of promoting Solidquote's lead generation services. Regal Result did so and contacted individuals without their prior express written consent.

3.      Because these calls were transmitted using technology capable of generating thousands of similar calls per day, plaintiff sues on behalf of a proposed nationwide class of other persons who received similar calls.

4.      A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

5.      Plaintiff is an individual residing in this District.

6.      Defendant Datalot, Inc. d/b/a Solidquote is a corporation.

7.      Defendant Regal Result, LLC is a limited liability company.

### Jurisdiction & Venue

8.      The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

9.      The Court has personal jurisdiction over Solidquote because it required Regal Result to make its telemarketing calls into this District. This Court has personal jurisdiction over Regal Result as it made telemarketing calls into this District and directed at the Plaintiff in this District.

10.     Venue is proper under 28 U.S.C. § 1391(b)(2) because the telemarketing calls were made into this District.

## TCPA Background

11.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA prohibits automated telemarketing calls to cellular telephones

12.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service …." *See* 47 U.S.C. § 227(b)(1)(A).

13.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

14.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15.     The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014, 14115 ¶ 165 (2003).

16.     In 2012, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd 1830, 1844 (2012) (footnotes omitted).

### Factual Allegations

17.     Solidquote contracts with a series of companies that provides, among other products, leads for insurance.

18.     However, Solidquote's contact with potential new customers is limited, as they engage third parties, such as Regal Result, to telemarket on their behalf to consumers.

19.     Recipients of these calls, including Plaintiff, did not consent to receive them.

20.     Plaintiff is, and at all times mentioned herein were, a "person" as defined by 47 U.S.C. § 153(39).

4

Calls to Plaintiff Abramson

21.    Plaintiff's telephone number, (412)-XXX-2147, is personal residential telephone service, which is the number he received the calls on.

22.    The Plaintiff received at least 5 pre-recorded calls from Regal Result on behalf of Solidquote at this number and at least 7 others at different numbers.

23.    Calls were made on January 12 through 20, 2026.

24.    The calls used pre-recorded messages.

25.    The pre-recorded messages are part of a scripted interaction.

26.    The recorded script begins stated "Hey.  This is Olivia.  How are you doing today?"

27.    It continued, "you may qualify for the final expense insurance plan that's going to cover one hundred percent of your funeral, burial, and cremation expenses."

28.    The avatar then said, "now, are you between the ages of forty to eighty?  Great.  Now I'll connect you with a supervisor for plans with max health benefits."

29.    Solidquote identified Regal Result as the company that cotacted Mr. Abramson.

30.    Solidquote offered insurance services, including from American General, as part of the calls.

31.    The calls were not necessitated by an emergency.

32.    Plaintiff's privacy has been violated by the above-described telemarketing robocalls from, or on behalf of, Defendants. The calls were an annoying, harassing nuisance.

33.    Plaintiff and all members of the Class, defined below have been harmed by the acts of Defendants because their privacy has been violated.

34.     The calls occupied their cellular telephone lines, rendering them unavailable for legitimate communication.

### Solidquote's Vicarious Liability for Regal Result's Conduct

35.     The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

36.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

37.     In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

38.     On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that entities such as Solidquote may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

6

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

39.     Solidquote instructed Regal Result on what types of individuals it could call on its behalf.

40.     For example, Solidquote only allowed Regal Result to call (a) individuals who were insured with certain companies (b) had a specific credit score (c) lived in certain geographic regions and (d) other criteria related to the type of insurance policy they could be offered.

41.     Moreover, Solidquote maintained interim control over the actions of Regal Result.

42.     For example, Solidquote gave interim instructions to Regal Result by providing (a) approval of the script that they would have to use, (b) the dates and times they could make the calls (c) and instructions on how to consummate a transfer for an interested consumer.

43.     Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent."  *Id.* at 6593 (¶ 46).

## Class Action Allegations

44.     As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff bring this action on behalf of Class of all other persons or entities similarly situated throughout the United States.

45.     The Class of persons Plaintiff propose to represent is tentatively defined as:

**Robocall Class:** Plaintiff and all persons within the United States: (1) to whose residential telephone number, Regal Result, or a third party on their behalf, placed a call using pre-record messages (2) within the four years prior to the filing of the Complaint (3) that was, or could have been, transferred to Solidquote.

46.     Excluded from the Classes are counsel, the Defendants, and any entities in which the Defendant has a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

47.     The Class as defined above are identifiable through phone records, phone number databases, and business and customer records of Defendants.

48.     Based on the *en masse* nature of telemarketing, the potential members of the classes likely number at least in the thousands.

49.     Individual joinder of these persons is impracticable.

50.     The Plaintiff is a member of the class.

51.     There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

(a)  whether Defendants used a pre-recorded message to make the calls;

(b)  whether Defendants made calls to Plaintiff and members of the Class without first obtaining prior express written consent to make the calls;

(c)  whether Solidquote is vicariously liable for the conduct of Regal Result; and

(d)  whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

52.     Plaintiff's claims are typical of the claims of members of the Class.

8

53.    Plaintiff is adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

54.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents.

55.    The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## FIRST CAUSE OF ACTION

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227(b))**
**(On Behalf of Plaintiff Abitbol and the Robocall Class)**

56.    Plaintiff repeats the prior allegations of this Complaint and incorporates them by reference herein.

57.    The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an autodialer to Plaintiff and Class members' cellular telephones.

58.    The Defendants' violations were negligent, willful, or knowing.

59.    As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and

9

members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

60.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making pre-recorded calls, except for emergency purposes, to any cellular telephone number in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, pray for the following relief:

A.     Certification of the proposed Class;

B.     Appointment of Plaintiff as representatives of the Class;

C.     Appointment of the undersigned counsel as counsel for the Class;

D.     A declaration that Defendants and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E.     An order enjoining Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making pre-recorded calls, except for emergency purposes, to any cellular telephone number in the future.

F.     An award to Plaintiff and the Classes of damages, as allowed by law; and

G.     Orders granting such other and further relief as the Court deems necessary, just, and proper.

**JURY DEMAND**

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Plaintiff,
By Counsel,

By: */s/ Jeremy C. Jackson*
Jeremy C. Jackson (PA Bar No. 321557)
BOWER LAW ASSOCIATES, PLLC
403 S. Allen St., Suite 210
State College, PA 16801
Tel.: 814-234-2626
jjackson@bower-law.com

Anthony I. Paronich, *Subject to Pro Hac Vice*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorney for Plaintiff and the Proposed Class*